**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

SHANNON A. CHEATER,       )
                            )
         Plaintiff,     )
                            )
v.                      )     Case No. CIV-16-142-KEW
                            )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social      )
Security Administration,    )
                            )
         Defendant.     )

## OPINION AND ORDER

Plaintiff Shannon A. Cheater (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); see also, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 42 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a material handler and daycare worker. Claimant alleges an inability to work beginning August 22, 2012 due to limitations resulting from diabetes, high blood pressure, asthma, right ear deafness, muscle deterioration, and carpal tunnel

syndrome.

## Procedural History

On March 23, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 29, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from McAlester, Oklahoma. By decision dated October 16, 2014, the ALJ denied Claimant's requests for benefits. The Appeals Council denied review of the ALJ's decision on March 8, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an RFC which was not supported by substantial evidence; (2) posing hypothetical questions to the vocational expert which did not contain all of Claimant's limitations; (3) failing to perform a proper credibility analysis; and (4) failing to fully develop the record.

## RFC Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of diabetes mellitus, obesity, deafness in the right ear, asthma, hypertension, and anxiety. (Tr. 21). The ALJ determined Claimant retained the RFC to perform light work except he restricted Claimant to lifting or carrying 20 pounds occasionally and ten pounds frequently, pushing/pulling limitations consistent with the weight limitations, stand/walk for six hours out of an eight hour workday, and sitting for six to eight hours out of an eight hour workday. Claimant would need a sit/stand option, defined as a temporary change in position from sitting to standing, with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production. The ALJ designated that Claimant should avoid concentrate exposure to dust, fumes, odors, poorly ventilated areas, and loud noises. Claimant should never climb ropes,

ladders, and scaffolds. She was limited to only occasional contact with co-workers, supervisors, and the general public. (Tr. 24). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of electrical accessory assembler and conveyor line bakery worker, both of which the ALJ found existed in sufficient numbers in both the regional and national economies. (Tr. 29). As a result, the ALJ determined Claimant was not disabled from June 1, 2009 through the date of the decision. (Tr. 30).

Claimant contends the RFC is not supported because the ALJ did not account for her diabetic neuropathy at step two in finding it as a severe impairment and in the limitations in the RFC. The ALJ considered the evidence of Claimant's peripheral neuropathy in the decision. While Claimant reported the condition, the ALJ discounted its effects upon her ability to engage in basic work activity because Claimant was walking and moving but had aching and burning in her lower extremities. However, she reported improvement with changes in her diet and exercise program and 'was very happy with the way she was feeling at the time." Claimant also had mixed up her diabetes medication and had not been taking it as prescribed. (Tr. 26). She also did not take insulin despite having an elevated blood sugar reading. Medical professionals had

noted that Claimant had refused to take insulin on at least four occasions. (Tr. 512, 553, 558, 612). The ALJ may consider the failure to follow recommended medical treatment in his denial of benefits. <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." <u>White v. Barnhart</u>, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. <u>Id</u>. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." <u>Id</u>.

The medical record does not support a finding that Claimant's neuropathy caused the level of limitation she now urges. The ALJ's failure to include neuropathy as a severe impairment at step two or to include any further restrictions in the RFC attributable to this

condition was not error.

## Step Five Analysis

Claimant next asserts the ALJ improperly found Claimant could perform the representative jobs based upon the testimony of the vocational expert. This contention is based upon the assumption that the ALJ should have included additional restrictions based upon Claimant's neuropathy in the RFC and, consequently, the hypothetical questioning of the vocational expert. This Court rejected the inclusion of further restrictions due to this condition.

In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489. The questioning of the vocational expert accurately mirrored Claimant's limitations.

## Credibility Determination

Claimant contends the ALJ did not conduct a proper credibility analysis and specifically indicates he should have included an

analysis of the side effects of medication.  The ALJ found Claimant's testimony to be "partially credible."  He cited Claimant's ability to perform her daily activities, including housekeeping chores, shopping, driving, and attending PTA meetings. She required a break periodically.  He included a sit/stand option in the RFC "[b]ecause of the fatigue caused by diabetes and hypertension."  (Tr. 27).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence.  Id.

The ALJ properly analyzed and considered Claimant's testimony in arriving at the RFC.  Moreover, he accommodated the primary limitation to which she testified.  The medical record does not suggest limitations due to side effects from any of the medications Claimant was prescribed.  Indeed, she refused insulin when recommended.  This Court finds no error in the ALJ's consideration of Claimant's testimony.

### Duty to Develop the Record

Claimant asserts the ALJ should have obtained a consultative

examination "to get a better understanding of the extent of [Claimant's] neuropathy." Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or

10

prognosis necessary for decision." 20 C.F.R. § 416.919a(2).

Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The record of Claimant's diabetes and associated conditions is adequately represented in the medical record. The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth

sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED to Defendant for further proceedings**.

IT IS SO ORDERED this 25th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE